After initial remandment, this cause was again remanded to the trial court with the instructions that the court enter an order in compliance with North Carolina v. Pearce,395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and Texas v.McCullough, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986), stating its reasons for resentencing the appellant to a harsher sentence than it had previously imposed upon him.
On return to remand, the trial court entered a detailed order, which states as follows:
 "This case is before the court on remand from the Court of Criminal Appeals for a statement of reasons for the sentence of fifteen years heretofore imposed against the defendant.
 "A brief statement of the history of this case is appropriate to place the present proceeding in proper perspective.
 "The defendant was charged by indictment with extortion, first degree. More specifically, the indictment alleged that he knowingly obtained by threat to cause physical harm to Eugene Cushion, a check in the amount of $4,000 with intent to deprive him of such property.
 "At the trial, there was testimony that the defendant told his girl friend, Rita Wilbanks, that he planned to blackmail his employer, Eugene Cushion. Later that night, the defendant demanded money from Cushion and when he refused the demand, the defendant struck Cushion in the chest, head, and face. Cushion's glasses were knocked off and his face was caused to bleed. Cushion, who is smaller than the defendant and very unassertive, agreed to the defendant's demands if he would stop hitting him. The defendant then accompanied Cushion to Cushion's house to get his check book. The defendant had his girl friend write out a check for $4,000 and Cushion signed it.
 "The defendant threatened to kill Cushion and burn his house and business if he stopped payment on the check. The next day, the defendant cashed the check, bought a car, and otherwise spent the money.
 "The jury returned a verdict finding the defendant guilty as charged.
 "At the initial sentencing in this case, the State presented evidence of three prior convictions which the court considered as applicable under the provision of the Habitual Offender law, whereupon the court imposed a sentence of life.
 "Later, the defendant filed a motion to set aside or amend the sentence. After conducting a hearing on such motion, the court concluded that two of the prior convictions presented to invoke the Habitual Offender law were not due to be considered for that purpose because one resulted from a nolo contendere plea, and the other conviction arose from an offense which occurred when the defendant was seventeen years of age. *Page 534 
 "The court then re-sentenced the defendant imposing a sentence of fifteen years. At that time the court considered only one prior felony conviction, destruction of public property, as applicable to invoke the Habitual Offender law. Later, the Court of Criminal Appeals remanded the case for a determination of whether the value of the property destroyed was sufficient to constitute the offense as a felony. After taking testimony on this issue, the court determined that the evidence of value was too speculative to conclude that the offense was a felony, and the court disallowed the conviction for purposes of the Habitual Offender law. However, the court reimposed a sentence of fifteen years without applying the Habitual Offender law.
 "In imposing a sentence of fifteen years, which was within the sentencing range available for this offense, the court considered the following factors:
 "1. The offense was a serious offense in which the defendant used violence to take money from another against the owner's will. The offense was aggravated by the victim's unassertive demeanor which made him easy prey for the defendant.
 "2. The defendant's past criminal conduct was extensive. Although the convictions for sodomy, theft, and destruction of property were not applicable to invoke the Habitual Offender law, they were nevertheless relevant to the sentencing process and provide some insight to what sanction would be appropriate to deter the defendant from future criminal behavior. The defendant also has a prior harassment conviction, disorderly conduct conviction, and conviction for violating the prohibition law. At the time of sentencing, he had several pending charges for driving under the influence of alcohol and other traffic violations.
 "3. The defendant's employment record was not good. He had never kept a job for very long and was frequently fired for poor attendance.
 "4. The defendant's community reputation was bad.
 "5. Not only did the defendant make threats of deadly harm against the victim in connection with the commission of the offense, he also threatened to kill his girl friend if she testified against him.
 "The picture which emerges from the evidence cited above is that of an individual who has no respect for the property or safety of other people, no respect for law, and one who seeks in whatever way available to avoid the consequences of his criminal behavior. This conclusion was strengthened and reaffirmed by evidence which first came to the court's knowledge at the time of the last sentencing hearing that the defendant fled out of state upon his escape from the Dade County, Georgia jail.
 "The court sought to fashion a sentence in this case which would punish the defendant and deter him from criminal behavior in the future. It was the court's judgment at the time of sentencing and continues to be at this time that a sentence of now [sic] less than fifteen years is necessary to accomplish those purposes." (Emphasis supplied.)
In McCullough, supra, the Supreme Court recognized that the circumstances of many cases make the likelihood of judicial vindictiveness on resentencing remote, and that the requirements of Pearce, supra, need not be applied in every instance in which the defendant receives a harsher sentence on resentencing:
 "Beyond doubt, vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial. The Pearce requirements thus do not apply in every case where a convicted defendant receives a higher sentence on retrial. Like other 'judicially created means of effectuating the rights secured by the [Constitution],' Stone v. Powell, 428 U.S. 465, 482 [96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067] (1976), we have restricted application of Pearce to areas where its 'objectives are thought most efficaciously served,' 428 U.S., at 487
[96 S.Ct. at 3049]. Accordingly, in each case, we look to the need, under the circumstances, to 'guard against vindictiveness in the resentencing *Page 535 
process.' Chaffin v. Stynchcombe, 412 U.S. 17, 25
[93 S.Ct. 1977, 1982, 36 L.Ed.2d 714] (1973) (emphasis omitted). For example, in Moon v. Maryland, 398 U.S. 319 [90 S.Ct. 1730, 26 L.Ed.2d 262] (1970), we held that Pearce did not apply when the defendant conceded and it was clear that vindictiveness had played no [part in the enlarged sentence. In Colten v. Kentucky, 407 U.S. 104
[92 S.Ct. 1953, 32 L.Ed.2d 584] (1972), we saw no need for applying the presumption when the second court in a two-tier trial system imposed a longer sentence. In Chaffin, supra, we held Pearce not applicable where a jury imposed the increased sentence on retrial. Where the prophylactic rule of Pearce does not apply, the defendant may still obtain relief if he can show actual vindictiveness upon resentencing. Wasman v. United States, 468 U.S. 559, 569 [104 S.Ct. 3217, 3223, 82 L.Ed.2d 424] (1984)."
Id., 475 U.S. at 138, 106 S.Ct. at 978.
Moreover, the McCullough, Court noted:
 "Nothing in Pearce is to be read as precluding a rebuttal of intimations of vindictiveness. As we have explained, Pearce, permits 'a sentencing authority [to] justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings.' Wasman [v. United States], 468 U.S. at 572 [104 S.Ct. at 3224]; see also, id, at 573 [104 S.Ct. at 3225] (POWELL, J. concurring in part and concurring in judgment). This language, however, was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified. Restricting justifications for a sentence increase to only 'events that occurred subsequent to the original sentencing proceedings' could in some circumstances lead to absurd results."
Id., at 141, 104 S.Ct. at 980. (some emphasis supplied).
In Alabama v. Smith, ___ U.S. ___, 109 S.Ct. 2201,104 L.Ed.2d 865 (1989), the Court further extended the rationale that it employed in McCullough, supra, and related cases. InSmith, the respondent was sentenced, pursuant to his guilty pleas, to concurrent terms of 30 years' imprisonment on rape and burglary charges. Thereafter, the respondent moved to withdraw his guilty pleas on the grounds that they were not knowingly and voluntarily entered. The trial court denied the respondent's motion but this Court reversed, finding that the respondent had not been properly informed of the penalties associated with the crimes to which he had pleaded, Smith v.State, 494 So.2d 182 (Ala.Cr.App. 1986).
The case was reassigned to the same trial judge, and the appellant was charged not only with burglary and rape, but also with sodomy in the first degree, the charge that had previously been dismissed under the plea bargain agreement. In a jury trial, the respondent was found guilty of all three charges. This time, the trial judge sentenced the respondent to life imprisonment on the burglary conviction, a concurrent term of life imprisonment on the sodomy conviction, and a consecutive term of 150 years' imprisonment on the rape conviction. The court explained the harsher sentence was justified because it was convinced, based on the evidence adduced in respondent's trial, that its original sentence was too lenient. On appeal, this Court affirmed the respondent's convictions, as well as the life sentences imposed for burglary and sodomy, but remanded the rape conviction for resentencing. The Alabama Supreme Court then granted Smith's certiorari petition, which requested review of the burglary sentence. Thereafter, the Court reversed and remanded for resentencing on the burglary conviction. Ex parte Smith, 557 So.2d 13 (Ala. 1988). In reversing that Court's decision, the United States Supreme Court held as follows:
 "We think the same reasoning [as employed by the Court in Colten, supra, and Chaffin, supra] leads to the conclusion that when a greater penalty is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge. Even when the *Page 536 
same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial."
Alabama v. Smith, supra.
The trial court states in its order on return to remand that it "sought to fashion a sentence in this case which would punish the defendant and deter him from criminal behavior in the future," and "it was the court's judgment at the time of sentencing and continues to be at this time that a sentence of now [sic] less than fifteen years is necessary to accomplish those purposes." It is clear from the court's order that it originally intended to sentence the appellant to a term of fifteen years' imprisonment, whether or not the sentence was to be enhanced under the Habitual Felony Offender Act. This Court found such a reason to be acceptable in McConico, supra, at 1089, and we should do likewise in the present case. As further evidence that the trial court did not act out of vindictiveness, this Court notes that, pursuant to § 13A-8-14,Code of Alabama (1975), extortion in the first degree is a Class B felony. Therefore, the appellant could have been sentenced, without enhancement, to a maximum term of 20 years' imprisonment. Section 13A-5-56, Code of Alabama (1975). This is greater than the sentence which the trial court actually imposed upon him.
For the reasons stated above, the judgment of the trial court is correct and is due to be affirmed.
OPINION EXTENDED; AFFIRMED.
All the Judges concur.