McMILLAN, Judge
(dissenting).
Since the facts in this case are distinguishable from the facts as presented in the cases of Blow v. State, supra and English v. State, supra, as cited by the majority, I respectfully dissent.
In the present case, the following excerpted portions of the record reveal that the trial judge fully and compassionately explained to the defendant the ultimate consequences of his guilty plea, not only in terms of the permissible punishment, but also in terms of the action/inaetion on the part of the defendant in the meantime:
“THE COURT: Okay. As I understand it, Robert, you are to take a fifteen year plea on this 83-2319. That is, you are going to plead guilty today, right?
“MR. HOLMAN: Yes, sir.
“THE COURT: When you come in here at 9:00 a.m. on June the 15th, if you have not picked up any new cases and if you timely appear, come in on time, you will lock into a fifteen year minimum sentence on this case. The other case, the search warrant case, will be dismissed. [Emphasis added.]
“MR. HOLMAN: Yes, sir.
“THE COURT: If you fail to appear on June the 15th, or if you get arrested again, I reserve the option to sentence you up to life in the penitentiary. [Emphasis added.]
“MR HOLMAN: Yes.
“THE COURT: And the other case, the search warrant case, will not be dismissed.
“MR. HOLMAN: Okay.
“THE COURT: Do we understand each other?
“MR. HOLMAN: Yes, sir.

“THE COURT: Do you understand what will happen if you get arrested again?
“MR. HOLMAN: Yes, sir.
“THE COURT: What? When we catch up with you, what is going to happen?
“MR. HOLMAN: I have the other charge and when the sentence ...
“THE REPORTER: Judge, I am sorry, I can’t hear.
“THE COURT: The fifteen years will be off and I could give you up to life, right?
“MR. HOLMAN: Yes, sir.

“THE COURT: All right. So, your net sentence is fifteen years, when you come in in June. Now, if these narcotic officers tell me that you are active in narcotics, between now and then, all deals are off.
“MR. HOLMAN: Yes, sir.

“THE COURT: I would think that if you behave yourself appropriately, that it would go well for you. It would go worse for you if you didn’t behave. How old are you now?
“MR. HOLMAN: Fifty-four.
“THE COURT: Fifty-four. I don’t know how long you would be down there. I know you would be down there a long time on a life sentence, consecutive with the other case. So, you have every incentive to come in and bite the bullet on this thing and get it over with, okay?”
As the above clearly reveals, the court’s “fifteen year” recommendation was contingent upon the defendant’s “timely reporting and no criminal activity.” Thus, there was no “broken promise” * on the part of *500 the court; rather, the defendant’s subsequent actions precipitated the court's decision.
This court has repeatedly stated that the decision to allow a defendant to withdraw a guilty plea is within the sound discretion of the trial court and such decision will not be disturbed upon appeal “except when an abuse of that discretion is demonstrated”, Tiner v. State, 421 So.2d 1369, 1370 (Ala.Crim.App.1982). Here, there is no showing that there was any misrepresentation as to the length of the sentence which could, and would, be imposed upon the defendant. There is additionally no showing that the defendant was misled as to the maximum sentence he would receive by the judge nor is there any showing that the defendant’s plea did not represent a “knowing and intelligent choice among known alternatives.” Chapman v. State, 412 So.2d 1276, 1277 (Ala.Crim.App.1982). As this court noted in Chapman:
“The fact that a defendant who has knowingly and intelligently pled guilty later becomes dissatisfied with the sentence he received does not constitute a ground for invalidating the guilty plea.” Id. at 1278.
The practical effect of the majority’s decision is to reward .the defendant for disobeying the express order of a compassionate trial court judge who allowed the defendant additional time to obtain medical treatment for his drug problems and get his “affairs in order.” We are not dealing, in this case, with a youthful, naive and presumably impressionable defendant. Here, we have a fifty-four year old habitual felony offender who agrees that the court can and will “nail [the defendant’s] hide for life” and yet, evidently, believes that he does not have to live up to his part of the agreement. The majority’s decision is inequitable, since it puts the defendant in a much better position than he would have been in had he obeyed the express order of the court.
For the reasons outlined above, I respectfully dissent.

 Both Blow and English cite the United States Supreme Court case of Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 *500 (1971), for the rule that a plea-bargain promise “must be kept."